IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
PLANO DIVISION

| | | |
|---|---|---|
| TAMMY PINSON, | § § § | |
| Plaintiff, | § § § | |
| -v- | § § § | Civil Action No. |
| | § § | |
| PLANO INDEPENDENT SCHOOL DISTRICT, | § § § § | |
| Defendant. | § | |

PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

NOW COMES TAMMY PINSON, and files this, her Plaintiff's Original Complaint.

I.
PARTIES

1. Plaintiff Tammy Pinson is an individual who resides in Collin County, Texas.

2. Defendant Plano Independent School District is a public independent school district and political subsidiary of the State of Texas. It may be served with process by serving Superintendent Sara Bonser at 2700 West 15th Street, Plano, TX 75075.

II.
JURISDICTION AND VENUE

3. This Court has original jurisdiction to hear this complaint and to adjudicate the claims stated herein under 28 U.S.C. § 1331, this action is brought under 42 U.S.C. § 2000e-2(a), and Texas Labor Code Chapter 21.

4. Venue is appropriate with this Court because the acts giving rise to this lawsuit occurred in this District in Collin County, Texas, and Defendant is subject to personal jurisdiction in Texas.

### III.
### EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Prior to filing this action, Ms. Pinson timely filed her written charge asserting discrimination with the Equal Employment Opportunity Commission ("EEOC") within the appropriate number of days. In conformance with the law and EEOC's "right to sue" letter, Ms. Pinson filed this action in Federal District Court for the Eastern District of Texas prior to the expiration of ninety (90) days from the date of receiving her right to sue letter. Ms. Pinson has exhausted all administrative remedies; therefore all conditions precedent to Ms. Pinson maintain this civil action have accrued, occurred, or been waived. *Jones v. Robinson Prop. Grp., L.P.* 427 F.3d 987, 992 (5th Cir. 2005).

### IV.
### STATEMENT OF FACTS

6. Ms. Pinson was employed by Defendant as a Teacher Assistant with Guinn Special Programs Center ("Guinn"). Ms. Pinson maintained her position until her employment contract was not renewed for 2014.

7. In 2012, Ms. Pinson was a divorcee with children from her pervious marriage. She became friendly with a teacher at Guinn who was also a divorcee with children named Sheila. The women soon began a plutonic friendship as a result of similar life paths and common interests.

8.     In 2012, ISSIAH BLAKELY, a male co-worker at Guinn, began to perpetuate a rumor among faculty and staff that Ms. Pinson was really a homosexual female who had an attraction for her co-worker and friend Sheila. At the start of Issiah's rumor, Ms. Pinson had never been in a relationship with someone of the same sex nor had she publicly mentioned any such feelings or expressions.

9.     In 2013, SHARON BRADLEY became Principal at Guinn. Prior to her promotion and assignment as Principal, Ms. Bradley served as Vice Principal at Guinn.

10.    Ms. Pinson reached out to a school district hotline to report the sexual harassment from co-worker Issiah and seek advice on handling the situation. The hotline instructed Ms. Pinson to report the harassment to the school's vice principal, Sharon Bradley. Ms. Pinson informed Vice Principal Bradley of the sexual harassment and rumor perpetrated by Issiah.

11.    As far as Ms. Pinson is aware, no investigation was conducted and no punishment admonished for Issiah's inappropriate and deplorable conduct. Ms. Pinson believes the lack of investigation or follow-up is the result of then-Vice Principal Bradley's personal relationship with Issiah as she fought to keep Issiah's job after he verbally and physically attacked a student.

12.    Ms. Pinson and Sheila began an intimate relationship. However, the couple did not become public with the relationship. Issiah continued to taunt Ms. Pinson regarding her sexuality and relationship with Sheila. Soon after, Ms. Pinson and Sheila's relationship became public knowledge among the school's faculty and staff.

13.    After Bradley became Principal at Guinn, she called Ms. Pinson into her office to discuss, among other things, Ms. Pinson's romantic relationship with Sheila. During this discussion, Principal Bradley mentioned to Ms. Pinson that her relationship with Sheila was not a good look for "us" with an indication towards Principal Bradley's skin color. Soon after, Sheila

was required by Principal Bradley to sign an agreement in which Sheila agreed that she would not permit Ms. Pinson from being present in her classroom.

14. At the end of 2013, Ms. Pinson was notified that her employment contract would not be renewed for 2014 and that her services would no longer be required. When Ms. Pinson inquired about a reason for her non-renewal, Principal Bradley informed her it was for reasons of insubordination. Ms. Pinson received a couple disciplinary write-ups but no single or combination of disciplinary complaints arose to the degree of egregious action as physical altercation with a student or other action that would warrant termination or non-renewal.

## V.
## CAUSE OF ACTION: SEXUAL DISCRIMINATION

15. Ms. Pinson realleges and incorporates the allegations contained in paragraphs 1-14 as if fully stated herein.

16. Defendant violated 42 U.S.C. § 2000e-2(a) and Chapter 21 of the Texas Labor Code when it discriminated against Ms. Pinson because of her sex and sexual orientation.

17. Defendant is a government agency subsidiary and public education.

18. Ms. Pinson is a gay African-American woman and belongs to a protected class under the laws of the United States.

19. Ms. Pinson was terminated from her position at Guinn for reasons related her sexual orientation and gender.

20. Ms. Pinson was harassed by Defendant and Defendant's agent.

21. The harassment and termination were based on Ms. Pinson's sex and sexual orientation.

22. The harassment and termination affected a term, condition, or privilege of Ms. Pinson's employment.

23. Defendant was aware of the harassment and failed to take appropriate action to prevent remedial action.

24. As a result of the actions of the Defendant, Ms. Pinson suffered damages within the jurisdictional limits of this Court.

## VI.
## DAMAGES

25. As a result of Defendant's discriminatory conduct, Ms. Pinson has suffered and will continue to suffer pecuniary losses, including without limitation, lost wages and other benefits associated with her employment. Ms. Pinson has suffered non-pecuniary losses, including without limitation to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

26. Therefore, Ms. Pinson seeks the following damages:

a. Equitable relief as may be appropriate such as reinstatement, promotion, back pay, front pay, and court costs.

b. Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary loses.

c. Punitive Damages to the extent Defendant acted with malice or reckless indifference.

d. Reasonable attorney's fees and costs including reasonable expert fees.

e. Pre and post judgment interest at the maximum rate permitted by law.

## VII.
## DEMAND FOR A TRIAL BY JURY

27.     Pursuant to Rule 81(c)(3)(A) of the Federal Rules of Civil Procedure, Ms. Pinson has made demand for a trial by jury in this action.

## VIII.
## PRAYER

WHEREFORE, premises considered, Ms. Pinson respectfully prays that Defendant be cited to appear and, that upon a trial on the merits, that all relief requested be awarded to Ms. Pinson, and for such other and further relief to which Ms. Pinson is justly entitled.

Respectfully submitted,

By: */s/ Shayan Elahi*
Shayan Elahi
Texas Bar No. 24080485
P.O. Box 630827
Irving, TX 75063
T: (407) 902-5282
F: (888) 633-8920
E: dallasfortworthattorney@gmail.com